IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ROLIN CONSTRUCTION, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 19-01135-WS-N |
| ) | |
| **LIBERTY MUTUAL GROUP, INC.,** ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter comes before the Court on the Motion for Summary Judgment (doc. 17) filed by defendant Ohio Casualty Insurance Company ("OCIC"), whom the parties appear to agree was incorrectly named in the Complaint as Liberty Mutual Group, Inc. The Motion has been briefed and is now ripe.

**I.     Relevant Background.**[1]

Plaintiff, Rolin Construction, Inc., brought this action against OCIC asserting a singular state-law claim for breach of contract. This cause of action arises from a performance bond issued by OCIC in Rolin's favor in connection with a construction project in Atmore, Alabama. Rolin's position is that OCIC "breached the terms of the Bond by failing to perform, neither

---

[1] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016) ("It is not this Court's function to weigh the facts and decide the truth of the matter at summary judgment …. Instead, where there are varying accounts of what happened, the proper standard requires us to adopt the account most favorable to the non-movants.") (citations and internal quotation marks omitted). Accordingly, the record will be viewed in the light most favorable to plaintiff, with all justifiable inferences drawn in its favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] Plaintiff's version of the facts drawing all justifiable inferences in [its] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

making any payment to Rolin nor denying liability under the terms of the Bond." (Doc. 2, PageID.7, ¶ 32.)

### A. The OCIC Performance Bond.

Starting from the beginning, Rolin was the general contractor for the construction of a "Child and Youth Development Center – Multiple Purpose Building" on land owned by the Poarch Band of Creek Indians in Atmore, Alabama (the "Project"). (Doc. 2, PageID.3-4, ¶¶ 5-6.) In connection with the Project, Rolin entered into a subcontract with nonparty Wind Clan Construction Company, Inc., on September 19, 2016, for the latter to supply certain labor and materials. (*Id.*, ¶ 5.) On the same date, OCIC issued Performance Bond No. 674025923 to Wind Clan for the Project in the amount of $2,098,277.00 (the "Bond"). (*Id.*, PageID.4, ¶ 7.) The Bond specifies Wind Clan as "Contractor," Rolin as "Owner," and OCIC as "Surety." Because the terms of the Bond are of critical importance to the issues joined on summary judgment, it is instructive to explore those provisions in detail at the outset.

Section 1 of the Bond reflects that Wind Clan and OCIC, "jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to [Rolin] for the performance of the Construction Contract, which is incorporated herein by reference." (Doc. 16-1, PageID.82, § 1.)[2] Section 2 of the Bond provides that if Wind Clan performs the Construction Contract, then OCIC and Wind Clan "shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3." (*Id.*, § 2.)

Section 3 of the Bond is fairly involved. It prescribes certain conditions that must be satisfied to give rise to OCIC's obligations under the Bond "[i]f there is no Owner Default [*i.e.*, no default by Rolin] under the Construction Contract." (*Id.*, § 3.)[3] The initial condition is that

---

[2]     The term "Construction Contract" is defined in the Bond as "[t]he agreement between [Rolin] and [Wind Clan] identified on the cover page, including all Contract Documents and changes made to the agreement and the Contract Documents." (*Id.*, PageID.84, § 14.2.) The agreement identified on the cover page of the Bond bears the date September 19, 2016, is in the amount of $2,098,277.00, and has the description of the "Child and Youth Development Center – Multipurpose Building." (*Id.*, PageID.82.)

[3]     The term "Owner Default" is defined in the Bond as "[f]ailure of [Rolin], which has not been remedied or waived, to pay [Wind Clan] as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract." (*Id.*, PageID.84, § 14.4.)

Rolin "first provides notice to [Wind Clan] and [OCIC] that [Rolin] is considering declaring a Contractor Default [*i.e.*, a default by Wind Clan].  Such notice shall indicate whether [Rolin] is requesting a conference among [Rolin], [Wind Clan] and [OCIC] to discuss [Wind Clan]'s performance. … Unless [Rolin] agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of [OCIC]'s receipt of [Rolin]'s notice."  (*Id.*, § 3.1.)  If all three entities agree, Section 3.1 of the Bond continues, Wind Clan "shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive [Rolin]'s right, if any, subsequently to declare a Contractor Default."  (*Id.*)  The second condition for OCIC's obligation under the Bond to arise is that Rolin "declares a Contractor Default, terminates the Construction Contract and notifies [OCIC]."  (*Id.*, PageID.83, § 3.2.)[4]  And the third condition is that Rolin "has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to [OCIC] or to a contractor selected to perform the Construction Contract."  (*Id.*, § 3.3.)

With respect to the notice requirements set forth in Section 3.1, an important caveat is contained in Section 4 of the Bond.  That section clarifies that "[f]ailure on the part of [Rolin] to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to [OCIC]'s obligations, or release [OCIC] from its obligations, except to the extent [OCIC] demonstrates actual prejudice."  (*Id.*, § 4.)

Finally, for summary judgment purposes, Section 5 enumerates OCIC's obligations when Rolin has satisfied the conditions of Section 3.  In that event, OCIC "shall promptly and at [OCIC]'s expense take one of the following actions:

> "**§ 5.1** Arrange for [Wind Clan], with the consent of [Rolin], to perform and complete the Construction Contract;
>
> "**§ 5.2** Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;
>
> "**§ 5.3** Obtain bids or negotiated proposals from qualified contractors acceptable to [Rolin] for a contract for performance and completion of the Construction Contract, … and pay to [Rolin] the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by [Rolin] as a result of the Contractor Default; or

---

[4]    The term "Contractor Default" is defined in the Bond as "[f]ailure of [Wind Clan], which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract."  (*Id.*, § 14.3.)

> "**§ 5.4** Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:
>
>> "**.1** After investigation, determine the amount for which it may be liable to [Rolin] and … make payment to [Rolin]; or
>>
>> "**.2** Deny liability in whole or in part and notify [Rolin], citing the reasons for denial."

(Doc. 16-1, PageID.83, § 5.)

### B.  *Course of Dealing Among Rolin, Wind Clan, and OCIC.*

As indicated, Rolin entered into a subcontract with Wind Clan on September 19, 2016, pursuant to which Wind Clan agreed to provide certain labor and materials for the Project. On May 5, 2017, Rolin sent a letter to Wind Clan to terminate that subcontract. (Doc. 16-3, PageID.101.)[5] In both Rolin's "FINAL NOTICE TO COMPLY" sent to Wind Clan on May 4, 2017 (which identified specific tasks that Wind Clan must complete by the following day to avoid termination of the subontract) and Rolin's "NOTICE OF TERMINATION" sent to Wind Clan on May 5, 2017, Rolin copied Wind Clan's bonding agent, a company called Bonding & Insurance Solutions, LLC. (Docs. 23-1, 23-2, PageID.247-48.) It is undisputed that Rolin did not notify OCIC directly at that time; however, both parties appear to acknowledge that notice to Bonding & Insurance Solutions was sufficient to constitute notice to OCIC. Neither side has argued otherwise for summary judgment purposes.

Rolin went on to hire a company called Dixie Acoustical to perform the remaining interior work that had been Wind Clan's responsibility. Nonetheless, Rolin and Wind Clan proceeded to enter into an oral contract on May 8 or 9, 2017. Pursuant to that oral agreement, Wind Clan would be allowed to remain on the Project to complete the outside scope of work, meaning the exterior portions of the Project that had been previously assigned to Wind Clan. (Doc. 16-4, PageID.165, n.29.) In particular, Wind Clan "agreed to stay on the project and continue work on the exterior portions of the building" in hopes that "there would be some amount of money left over at the end of the project so Wind Clan could … get something."

---

[5] According to Rolin, its reason for termination was that Wind Clan had performed its work on the Project inadequately, with deficiencies including failure to perform in a timely manner, poor workmanship, interference with other subcontractors, failure to provide sufficient manpower and supervision, use of defective materials, and failure to correct non-conforming work. (Doc. 16-2, PageID.88, ¶¶ 6-8.)

(Doc. 23-3, PageID.252.) Thus, the oral contract "consisted of Rolin offering and Wind Clan agreeing to complete the exterior scope of work contemplated in the original written contract in exchange for the possibility and hope that there would be monies left out of the original contracted price … to be paid to Wind Clan … along with the assurance that Rolin would not file a claim on Wind Clan's bond." (Doc. 16-4, PageID.136.)

Despite this new arrangement, performance problems persisted, culminating in Wind Clan's failure or refusal to complete punch list items. On December 4, 2017, Rolin sent Wind Clan a letter terminating the oral contract. (Doc. 16-4, PageID.148.) On December 15, 2017, Rolin both notified OCIC that Wind Clan was in default and provided notice to OCIC that it had terminated Wind Clan. (Doc. 2, PageID.5, ¶ 19.)[6] In the December 15 letter, Rolin specifically "requests a conference with Ohio Casualty to discuss completion of work and claim for expenses due to Wind Clan Construction termination and performance failures." (Doc. 23-5, PageID.259.) OCIC responded to Rolin's notice of termination with a letter dated January 15, 2018, requesting certain information and documentation to facilitate OCIC's investigation. (Doc. 23-6, PageID.260.)

Throughout this period, there was occasional written communication between Rolin and Bonding & Insurance Solutions, LLC, which again was Wind Clan's bonding agent. In particular, on May 8, 2017 (just three days after termination of the written contract), Bonding & Insurance contacted Rolin about the Wind Clan cancellation and wrote, "If you could please send me … the Original Bond, once received I can have it cancelled." (Doc. 23-4, PageID.257.) Then, on June 28, 2017, Rolin notified Bonding & Insurance that Wind Clan was continuing to perform work on the exterior of the building but that "Wind Clan is upside down about $500 – 600 K on the project. … [W]hat do I need to do to update you to completion and if Wind Clan can not absorb the full amount and we have to file a claim on their bond." (*Id.*) Bonding & Insurance responded by thanking Rolin for the update and indicating, "I appreciate you keeping us in the loop as well as working with Wind Clan, as per the Contractural [*sic*] agreement." (*Id.*, PageID.256.)

---

[6] That notice stated, "Please consider this the notice for the termination of Wind Clan Construction Company contract with Rolin Construction, Inc. for the work included in the Subcontract Agreement dated September 19, 2016 (Bond # 674025923) for the Child and Youth Development Center – Multipurpose Building." (Doc. 23-5, PageID.259.)

### C. The Rolin/Wind Clan Litigation.

In January 2018, Rolin filed suit against Wind Clan in this District Court in an action styled *Rolin Construction, Inc. v. Wind Clan Construction Company, Inc.*, Civil Action No. 18-0032 (the "*Wind Clan* Litigation"). The *Wind Clan* Litigation involved the same work on the same Project as that at issue here; however, OCIC was not a party to that case.[7] The *Wind Clan* Litigation proceeded to a nonjury trial before Magistrate Judge Murray from October 30, 2019 through November 1, 2019. During the trial, Rolin executives repeatedly testified that Rolin had never filed a claim against the Bond. (Doc. 16-3, PageID.102, 113, 116.) However, Wind Clan's *de facto* CFO, Cliff Dorsey, testified, "I believe they filed a bond [claim] against Wind Clan. … I'm just going to assume that they did and … [t]hey filed a claim against Wind Clan's bond." (Doc. 23-3, PageID.255.)

In his Conclusions of Law, Judge Murray expressly found that Rolin had breached the Construction Contract by failing to give Wind Clan the required 48-hours notice of default and an opportunity to cure before issuing written notice of termination. (Doc. 16-4, PageID.162-63.) On that basis, Judge Murray opined, "Given the impropriety of Rolin's May 5, 2017 written termination of Wind Clan, this Court deems the act to be a termination for the convenience of Rolin." (*Id.*, PageID.163.) Judge Murray elaborated that he determined "the termination of May 5, 2017 to be termination of the whole of the Subcontract for convenience …." (*Id.*) And he found that Rolin breached the express terms of the Construction Contract by failing to pay Wind Clan the value of the latter's acceptable work, or $120,600. (*Id.*, PageID.178-79.) Ultimately, Judge Murray entered a Judgment that "Rolin (or its surety) pay to Wind Clan **$120,600.00** under the written subcontract for the reasons articulated in the Court's Order, as well as the **$15,050.92** remaining out of the contract price after making all proper deductions." (Doc. 16-5,

---

[7] It is not clear why Rolin elected not to name OCIC as a defendant in the *Wind Clan* Litigation, but instead chose to litigate matters related to the Project on a piecemeal basis. Be that as it may, OCIC contends – and Rolin has not disputed – that, for summary judgment purposes in this action, Rolin is bound by judicial determinations adverse to it that were made in the *Wind Clan* Litigation; therefore, OCIC relies on findings from that case in support of its Rule 56 Motion in this case. In the absence of any objection or argument to the contrary by Rolin, this Court will do the same. *See generally Drill South, Inc. v. International Fidelity Ins. Co.*, 234 F.3d 1232, 1237 (11th Cir. 2000) ("the general rule that a surety is bound by a judgment entered against its principal when the surety had both notice and opportunity to defend applies whether the principal and surety are sued in the same action or in separate actions").

PageID.184-85.)  Judge Murray also made a specific finding, however, that "Wind Clan breached its May 8 or 9, 2017, oral contract with Rolin … to complete all exterior and interior framing, including the owner/architect punch list ….  Wind Clan does not dispute the existence of a valid oral contract binding the parties and the Court does not find any evidence that Rolin failed to perform under the oral contract."  (Doc. 16-4, PageID.166-67 (footnotes omitted).)

## II. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## III. Analysis.

The legal principles undergirding OCIC's Rule 56 Motion are straightforward and uncontested.  As a matter of well-settled Alabama law, "[a] surety is jointly and severally liable with the principal on the underlying obligation."  *SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co.*, 931 So.2d 706, 708 n.3 (Ala. 2005).  Thus, if the principal (in this case, Wind Clan) is not liable to Rolin under the Construction Contract, then neither is the surety (in this case, OCIC).  Likewise, if the obligee (in this case, Rolin) has not complied with the conditions of the performance bond, then the surety (OCIC) has no liability under the Bond.  *See, e.g., Insurance*

*Co. of the West v. Ollinger Const., Inc.*, 2012 WL 6651923, *4 (S.D. Ala. Dec. 20, 2012) ("a surety in Alabama has the right to stand on its contract and to exact compliance with its stipulations, which may not be extended by construction or implication beyond the precise terms of the agreement") (citation omitted).  On summary judgment, OCIC advances a series of arguments why it believes there is no liability.  For purposes of evaluating those arguments, it bears remembering that "[a] performance bond is an express, written bilateral contract to which the general principles of contract interpretation apply."  *Bank of Brewton, Inc. v. International Fidelity Ins. Co.*, 827 So.2d 747, 752 (Ala. 2002).

        ***A.***      ***Whether Wind Clan Performed the Construction Contract.***

Rolin's breach of contract claim is predicated on the theory that OCIC breached the Bond by failing to perform its obligations under Section 5.4, which were either (i) after investigation, to make payment to Rolin; or (ii) to deny liability and notify Rolin, citing the reasons for the denial.  However, Section 2 of the Bond specified that if Wind Clan performed the "Construction Contract," then OCIC "shall have no obligation under this Bond."  A key issue on summary judgment is whether Wind Clan in fact performed the Construction Contract; indeed, OCIC argues on summary judgment that "Wind Clan performed the Construction Contract," such that Section 2 of the Bond precludes liability for OCIC. (Doc. 17-1, PageID.221.)  In support of this argument, OCIC posits that Judge Murray's opinion in the *Wind Clan* Litigation included a holding that Wind Clan had performed the Construction Contract.  (*Id.*)  The undersigned has been unable to locate any such holding in the cited portion of the opinion.  To be sure, Judge Murray did make a specific determination that "Rolin breached the express terms of the Subcontract it had with Wind Clan by not paying to Wind Clan the value of Wind Clan's acceptable work." (Doc. 16-4, PageID.178-79.)  However, nowhere in the text cited by OCIC is there a judicial finding that Wind Clan performed the Construction Contract.  In the absence of other summary judgment evidence (which defendant has not supplied), the Court cannot conclude as a matter of law on this record that Wind Clan performed the Construction Contract, such that OCIC was freed of any obligation under the Bond.[8]

---

[8]    Indeed, many of Judge Murray's findings appear to run directly contrary to the notion that Wind Clan performed the Construction Contract prior to the May 5, 2017 termination date.  For example, he concluded that (i) "Wind Clan experienced delays and failures on the delivery of correct materials …, which prevented timely exterior metal stud work" (doc. 16-4, (Continued)

### B.     *Whether an Owner Default Occurred.*

Next, OCIC argues that Section 3 of the Bond precludes any possible finding of liability here. Section 3 specifies that "[i]f there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise" after certain conditions are satisfied by Rolin. (Doc. 16-1, PageID.82.) A plain reading of this contract language prompts the conclusion that in the event of an "Owner Default under the Construction Contract," OCIC would have no obligation under the Bond. On summary judgment, defendant contends that Judge Murray's ruling in the *Wind Clan* Litigation compels a conclusion that there was indeed an Owner Default under the Construction Contract, thereby negating any possible liability to OCIC under the Bond as a matter of law.

Section 14.4 of the Bond defines the term "Owner Default" as "Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract." (Doc. 16-1, PageID.84.) Without question, Judge Murray's Order contains a specific determination that Rolin (the "Owner") had breached material terms of the Construction Contract (the written subcontract between Rolin and Wind Clan dated September 2016). Indeed, he wrote, "This Court now determines that ***Rolin breached the express terms of the Subcontract it had with Wind Clan by not paying to Wind Clan the value of Wind Clan's acceptable work (that is, $120,600).***" (Doc. 16-4, PageID.178-79 (emphasis added).) OCIC describes this finding as "the elephant in the room" and argues that it necessitates a finding of Owner Default and entitles OCIC to judgment as a matter of law. (Doc. 25, at 3-4.)

In response, Rolin leans heavily on the Bond's definition of Owner Default as applying to a failure by Rolin "***which has not been remedied or waived***, to pay [Wind Clan] as required

---

PageID.123); (ii) "the supervisors Wind Clan had on the job were not instructing the laborers how to perform tasks correctly" (*id.*, PageID.124); (iii) as of March 13, 2017, "Wind Clan had not cured the previous problems enumerated" (*id.*, PageID.126); (iv) on April 21, 2017, Rolin notified Wind Clan of "numerous problem areas … and the need to address the twenty-one deficiencies listed therein" (*id.*, PageID.130); and (v) Dixie Acoustical billed Rolin approximately $180,000 for repairs to or rework of Wind Clan's work prior to the May 5 termination (*id.*, PageID.164-65). These record facts appear irreconcilable with – or at least to create genuine issues of material fact undermining – OCIC's position that it is entitled to summary judgment under Section 2 of the Bond because "Wind Clan performed the Construction Contract."

under the Construction Contract." (Doc. 16-1, PageID.84 (emphasis added).) Rolin focuses on the waiver language in that definition, which by its clear terms provides that even if Rolin failed to pay Wind Clan as required under the Construction Contract (which is what Judge Murray concluded), there is no Owner Default under the Bond if that failure to pay was waived. That is to say, if Wind Clan waived Rolin's failure to pay as required under the written subcontract, then there is no Owner Default for purposes of applying Section 3 of the Bond. Rolin's position is that there are genuine issues of material fact as to waiver, inasmuch as (i) Wind Clan made three applications for payment to Rolin under the subcontract prior to the May 5, 2017 termination date; (ii) Rolin did not make required payment to Wind Clan prior to the termination date; and (iii) notwithstanding Rolin's failure to pay, Wind Clan agreed to return to the Project and resume working under Rolin thereafter. A reasonable factfinder could construe these facts as evincing "an intentional relinquishment of a known right" by Wind Clan, which is how the Alabama Supreme Court traditionally defines the concept of "waiver." *See, e.g., Bassett v. Newton*, 658 So.2d 398, 402 (Ala. 1995).

Faced with Rolin's waiver argument, OCIC declines to address it on the merits. Instead, OCIC takes the position that Rolin's invocation of the waiver doctrine comes too late. According to OCIC, "The time for arguing Wind Clan's waiver is over as it should have been done in the Wind Clan/Rolin Matter." (Doc. 26, PageID.289.) OCIC's reasoning is opaque. Certainly, the issue of Owner Default under the Bond was not joined before Judge Murray in the *Wind Clan* Litigation, and Judge Murray made no specific findings as to whether there was or was not such an Owner Default. To be sure, he did conclude that Rolin had breached the written subcontract by failing to make required payments to Wind Clan, and that finding is binding on Rolin here. But Judge Murray did not wade into the question of waiver at all, and certainly did not make a finding of no waiver. So why is it too late for Rolin to raise a waiver argument here for purposes of discerning the respective rights and obligations of OCIC and Rolin under the Bond? Defendant does not explain. Because there appear to be genuine issues of material fact as to whether Rolin's breach of the subcontract was waived by Wind Clan, the Court cannot find as a matter of law that there was an Owner Default by Rolin that, pursuant to Section 3 of the Bond, forecloses any liability by OCIC to Rolin.

### C. *Whether Rolin Satisfied Conditions Precedent.*

Defendant's next argument in favor of summary judgment is that even in the absence of an Owner Default, OCIC has no liability because Rolin failed to comply with the conditions precedent as set forth in Section 3 of the Bond.[9] In OCIC's view, Rolin did not abide by these conditions in two specific respects. As an initial matter, OCIC focuses on the sequence of events prescribed by Sections 3.1 and 3.2. In particular, those sections provide that, in order to trigger defendant's Bond obligations, Rolin must "first provide[] notice to [Wind Clan] and [OCIC] that [Rolin] is considering declaring a Contractor Default," and allow either side to request a conference. Then, after providing such notice (the Bond does not specify how long Rolin must wait after providing the initial notice), Rolin must "declare[] a Contractor Default, terminate[] the Construction Contract and notif[y] the Surety." (Doc. 16-1, PageID.82-83.) Defendant argues that Rolin did not take these steps in the proper chronological order, and that rather than complying with Section 3.1, Rolin "instead terminat[ed] Wind Clan first and then ask[ed] for a meeting with OCIC." (Doc. 17-1, PageID.227.) On that basis, OCIC maintains that its obligations under the Bond were never activated and that it is entitled to summary judgment.

The trouble with this argument is that a reasonable finder of fact could disagree with OCIC's characterization of the facts as they relate to the chronology of events. Indeed, the summary judgment record includes a letter to Wind Clan (with copy to Bonding & Insurance Solutions, which Rolin describes as "Wind Clan's agent") dated May 4, 2017, in which Rolin issued a "FINAL NOTICE TO COMPLY" and stated that if Wind Clan did not complete certain enumerated tasks in a satisfactory manner by a certain deadline, "Wind Clan will be terminated and removed from the project." (Doc. 23-1, PageID.247.) Plaintiff submits that the May 4 letter constitutes the notice required under Section 3.1 to both Wind Clan and OCIC (presumably through the agent, Bonding & Insurance Solutions). The record also includes a letter from Rolin to Wind Clan (again with copy to Bonding & Insurance Solutions) dated May 5, 2017, wherein Rolin issued a "NOTICE OF TERMINATION" to Wind Clan and directed it to "cease all work and leave all equipment, materials, tools, etc. on site for work to be completed by others." (Doc.

---

[9] By the express terms of Section 5 of the Bond, OCIC's obligation to take action under the Bond (*i.e.*, to make payment to Rolin under the Bond or to deny liability and notify Rolin of the reasons for such denial) was triggered only "[w]hen the Owner [Rolin] has satisfied the conditions of Section 3." (Doc. 16-1, PageID.83, § 5.)

23-2, PageID.248.) According to Rolin, these documents support a reasonable conclusion that Rolin in fact followed the proper sequence of events pursuant to Sections 3.1 and 3.2 for terminating the subcontract with Wind Clan. Despite having an opportunity to do so in its reply, OCIC did not address Rolin's argument or explain why a reasonable fact finder could not conclude on this showing that Rolin had complied with the proper chronological sequence of events in the termination process.[10] Summary judgment is not appropriate for OCIC on the basis of its contention that Rolin failed to comply with Sections 3.1 and 3.2.[11]

       The second condition precedent in Section 3 that OCIC contends Rolin failed to satisfy is the Section 3.3 requirement that OCIC's surety obligations do not take effect until Rolin "has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to [OCIC] or to a contractor selected to perform the Construction Contract." (Doc. 16-1, PageID.83.) But the record on summary judgment unequivocally shows that Rolin hired a contractor named Dixie Acoustical to perform the Construction Contract after terminating Wind Clan, and there is no evidence and no reason to believe that Rolin did not pay the balance of the

---

[10] In its principal brief, OCIC relies on a letter from Rolin to OCIC dated December 15, 2017 in which Rolin first stated "[p]lease consider this the notice for the termination of Wind Clan Construction Company contract with Rolin Construction, Inc." and then went on to say, "Rolin Construction requests a conference with Ohio Casualty to discuss completion of work and claim for expenses …." (Doc. 16-7, PageID.199.) The reasons the December 15 letter cannot carry the day for OCIC on summary judgment include that (i) a reasonable fact finder could conclude that the December 15 letter related to the May 2017 oral agreement; (ii) a reasonable fact finder could also conclude that OCIC never bonded the oral agreement; (iii) a reasonable fact finder could conclude that the Rolin / Wind Clan subcontract had already been terminated on May 5, 2017; and (iv) because Rolin followed the proper procedures as to notice and termination in early May 2017, the December 15 letter is inconsequential for purposes of gauging Rolin's compliance or lack thereof with the conditions precedent of Section 3.1 and 3.2. At a minimum, genuine issues of material fact persist as to these points.

[11] OCIC's argument as it relates to the notice provisions of Section 3.1 and 3.2 fails on summary judgment for another, independent reason, as well. Section 4 of the Bond provides as follows: "Failure on the part of [Rolin] to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with condition precedent to [OCIC]'s obligations, or release [OCIC] from its obligations, *except to the extent [OCIC] demonstrates actual prejudice.*" (Doc. 16-1, PageID.83 (emphasis added).) On summary judgment, OCIC has not even attempted to make a showing of actual prejudice arising from any defect in Rolin's efforts to comply with the notice requirements of Section 3.1; therefore, any such shortcoming by Rolin is not a viable ground for OCIC to be awarded summary judgment.

contract price to Dixie Acoustical in accordance with their agreement and Section 3.3 of the Bond.  Certainly, OCIC (as the movant on summary judgment) has come forward with neither evidence nor argument that Rolin failed to do so.  On this record, the Court cannot find noncompliance by Rolin with the condition precedent set forth in Section 3.3, so as to avoid triggering OCIC's Bond obligations.  Once again, OCIC's Motion for Summary Judgment falls short.

        D.       *Termination for Convenience and Alabama Law.*

Finally, OCIC contends that entry of summary judgment is warranted in this case based on Judge Murray's finding that Rolin terminated the subcontract with Wind Clan for convenience on May 5, 2017.  In that regard, defendant relies on the Alabama Supreme Court's decision in *Public Bldg. Authority of City of Huntsville v. St. Paul Fire and Marine Ins. Co.*, 80 So.3d 171 (Ala. 2010).  The key language in that decision is as follows:

> "It is clear that, based on the PBA's termination of the contract for convenience, the PBA could not have ***subsequently*** satisfied the conditions precedent in the bond. ***Only after the PBA terminated the contract for convenience did it attempt to satisfy the conditions precedent, which, according to the plain language of the bond, is too late.***  Therefore, the trial court did not err in entering a summary judgment in favor of St. Paul."

*Id.* at 179 (emphasis added).  Based on this language, OCIC argues that "Alabama jurisprudence states that a termination for convenience precludes recovery on a bond that is conditioned on a termination for default." (Doc. 26, PageID.290.)

Rolin's rejoinder, however, is to focus on the highlighted portion of the above quotation.  According to Rolin, the *Public Bldg. Authority* decision is distinguishable because the Alabama Supreme Court emphasized that the owner in that case did not attempt to satisfy conditions precedent under the bond until after it had already terminated the subcontract for convenience.  By contrast, Rolin says, it satisfied the conditions precedent on the Bond <u>before</u> it terminated the Wind Clan subcontract.  So if the *Public Bldg. Authority* holding is – as it appears to be – that it is too late for an owner to satisfy a bond's conditions precedent after it has terminated the subcontract for convenience, then Rolin's position is that *Public Bldg. Authority* is inapplicable here because, unlike the owner in that case, Rolin actually met the conditions precedent on the Bond before terminating Wind Clan. (Doc. 24, PageID.278.)  In its reply, OCIC neither addresses this argument nor explains why the distinction urged by Rolin is not valid here.

-13-

## IV. Conclusion.

For all of the foregoing reasons, Ohio Casualty Insurance Company's Motion for Summary Judgment (doc. 17) is **denied**. This action remains set for Final Pretrial Conference before the undersigned on **January 19, 2021 at 9:00 a.m.**, with bench trial to follow during the **February 2021** civil term.

DONE and ORDERED this 14th day of December, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE